# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-00053-KDB-DCK

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| $16,761 in United States Currency, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Claimant Jermaine Sanders' Motion to Dismiss, Motion to Strike, and Request for Judicial Notice (Doc. Nos. 10,11,14). For the reasons discussed below, the Court will **DENY** the Motion to Dismiss, **DENY** the Motion to Strike, and will **GRANT IN PART** and **DENY IN PART** the Request for Judicial Notice.

## I. RELEVANT BACKGROUND

On November 16, 2020, Jermaine Sanders' rental vehicle was searched after law enforcement smelled marijuana and a certified drug detection canine positively detected the odor of narcotics on the vehicle (Doc. No. 13). Law enforcement found marijuana and $16,761 ("Currency") in the vehicle (Doc. No. 1). Officers of the Mooresville Police Department ("MPD") arrested Sanders and charged him with state drug offenses (Doc. No. 10-11). On November 17, 2020, MPD Detective Sergeant Shawn Elliott contacted Department of Homeland Security ("DHS") Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Ryan Powers and requested that HSI take over the investigation of the Currency (Doc. No. 10-11). On November 19, 2020, Sanders filed a "Motion for Personal Property to be Released to Defendant" in his Iredell

County District Court criminal case, Iredell County No. 20 CR 055180 (the "State Court") (Doc. No. 10-3).

On November 20, 2020, TFO Powers notified MPD that DHS would investigate the Currency and that MPD should follow standard protocol for turning-over the Currency to DHS (Doc. No 10-11). Then, on November 23, 2020, TFO Powers met with MPD Detective Shawn Elliott, who signed out the Currency, converted it to a certified check to U.S. Customs and Border Protection ("CBP") (which handles asset forfeiture actions for HSI) and delivered the check to TFO Powers, who then delivered the check to CBP in Charlotte. *Id.* Following the relinquishment of the Currency to federal authorities, on November 24, 2020, the State Court ordered the return of the Currency to Sanders (Doc. No 10-4). However, in doing so, the State Court order did not hold or assert that it was exercising *in rem* jurisdiction over the Currency. *Id.*

Subsequently, Sanders' counsel emailed the State Court's November 24 order to MPD and a state ADA, asking how the funds would be returned. She was told to contact the DHS or the United States Attorney's Office because the federal government had adopted the Currency (Doc. No. 13-1, p.9). Then, Sanders filed a verified motion to show cause on December 10, 2020, asserting that the MPD was out of compliance with the November 24, 2020 order. *Id.* The MPD responded in opposition, and on January 26, 2020, the Court issued an "Order on Verified Motion to Show Cause" which found probable cause for contempt and ordered MPD to appear in Court and show cause why MPD should not be held in contempt (Doc. No. 13-1, p. 10). As with the November 24th order, the January 26th order did not mention *in rem* jurisdiction.

On February 9, 2021, following a hearing on the order to show cause, the State Court issued an order holding that the State Court "acquired in rem jurisdiction over the cash on November 19,

2020 - the date Defense Counsel filed the motion for return of property." *Id.* The State Court also stated that, despite the Mooresville's ("Town") argument that MPD had, prior to the November 24th order for return of the property, turned over the Currency to DHS, the Town and MPD still had "ability to use funds, or to liquidate assets, at their disposal so as to enable them to comply with the subject order by releasing $16,761.00 to Mr. Sanders" and that the November 24 order "did not premise release of the amount of $16,761.00 on the police department's ability to effect reversal of its wrongful transfer of a different $16,761.00 to a third party." (Doc. No. 13-1 p. 60). More proceedings ensued in state courts, culminating in the North Carolina Court of Appeals issuing a temporary stay of the Iredell County District Court's February 9, 2021 order on April 26, 2021 (Doc. No. 13-2).

The United States filed a verified complaint for the forfeiture of the Currency pursuant to of 28 U.S.C. §§ 1345 and 1355 on March 26, 2021 (Doc. No. 1). The Claimant filed a motion to dismiss and request for judicial notice on April 16, 2021 (Doc. No. 10,11). The United States responded in opposition on April 30, 2021 (Doc. No. 13). The Claimant filed a motion to strike on May 7, 2021 (Doc. No. 14). Neither party contests the Claimant's standing to oppose the forfeiture pursuant to Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which allows any person who asserts an interest "in the defendant property" to file a claim.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff (here, the United States) has the burden of showing the existence of jurisdiction by a

preponderance of the evidence. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A court should dismiss an action for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." The purpose of a Rule 12(f) motion to strike is to avoid the waste of time and money that arises from litigating unnecessary issues. *Simaan, Inc. v. BP Products North America*, Inc., 395 F.Supp.2d 271, 278 (M.D.N.C. 2005); *see also Chapman v. Duke Energy Carolinas*, 73 Fed. R. Serv. 3d (Callaghan) 1273 (W.D.N.C 2009) ("Although courts have broad discretion in disposing of motions to strike, such motions 'are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'") (internal citations omitted).

### C. Request for Judicial Notice

Federal Rule of Evidence 201(b)(2) allows for the court to take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Typically, courts will take judicial notice of state court proceedings. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th

Cir. 1989). Courts will also take judicial notice of government publications. *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1152 n.2 (10th Cir. 2020).

### III. DISCUSSION

#### A. Motion to Dismiss

Claimant Sanders' motion to dismiss seeks to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Claimant argues that the Iredell County District Court has exclusive *in rem* jurisdiction over the Currency and therefore this Court is divested of its exclusive subject jurisdiction over forfeiture actions brought by the United States.[1] Because the Court finds that the State Court was not exercising *in rem* jurisdiction it will deny the motion to dismiss.

The United States brings this action under 21 U.S.C. § 881(a)(6) for violations of 21 U.S.C. §§ 841 and/or 846 (Doc. No. 1). While the Currency was initially seized by state police, the United States may seize drug proceeds without a warrant for the purpose of initiating forfeiture proceedings under several different circumstances, including if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency." 18 U.S.C. § 981(b)(2)(C). This transfer from a state law enforcement agency to a federal agency is often called "adoption." *See United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325, 47 S. Ct. 154, 71 L. Ed. 279, Treas. Dec. 41975 (1926); *United States v. Winston-Salem/Forsyth*

---

[1] Federal courts exercise exclusive *in rem* jurisdiction in forfeiture cases brought by the United States. 28 U.S.C. § 1355 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, . . ."); *U.S. v. $3,251.00 in U.S. Currency*, 2010 WL 1541490, at *2 (S.D. Miss. Apr. 16, 2010) ("Federal courts have exclusive, original subject matter jurisdiction over actions seeking civil forfeiture under an act of Congress.").

*Cnty. Bd. of Educ.*, 902 F.2d 267, 269 n.1 (4th Cir. 1990). Therefore, this Court has clear authority to exercise exclusive *in rem* jurisdiction over the Currency subsequent to DHS' adoption of the Currency from the MPD.[2]

However, this exclusive jurisdiction can be divested if the State Court had obtained *in rem* jurisdiction prior to this Court obtaining jurisdiction. Under those circumstances, dismissal of the federal action would be required as only one court can have *in rem* jurisdiction over a *res*. *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 196 (1935); *see also Mandeville v. Canterbury*, 318 U.S. 47, 48–49 (1943) ("the court first acquiring jurisdiction or assuming control of" the res "is entitled to maintain and exercise its jurisdiction to the exclusion of the other."). But, if the State Court was exercising *in personam* jurisdiction, and not *in rem* jurisdiction, then this Court may properly exercise jurisdiction in this case. *City of Concord v. Robinson*, 914 F.Supp.2d 696, 709 (M.D.N.C.2012) ("the jurisdictional boundaries between federal and state courts in the forfeiture context turn on whether and when a particular court exercised in rem or in personam jurisdiction."). Neither party disputes this black letter rule. Rather, the parties dispute whether the State Court was exercising *in rem* jurisdiction over the Currency or *in personam* jurisdiction over the defendant.

Accordingly, the threshold issue in deciding the motion to dismiss is whether the Court must defer to the State Court's November 24, 2020 order requiring the return of the Currency and/or the February 2021 determination that it was exercising *in rem* jurisdiction over the Currency. The answer is no.

---

[2] *Winston-Salem/Forsyth County*, 902 F.2d at 271 ("Federal forfeitures under section 881 are civil in nature and are *in rem* proceedings.").

When a federal agency adopts property, it is as if the agency "originally seized" it on the date it was seized by the local authorities. *Madewell v. Downs*, 68 F.3d 1030, 1039 (8th Cir. 1995); *see also Winston-Salem/Forsyth County,* 902 F.2d 267, 270 n.1 (4th Cir. 1990). Once a federal agency has adopted the property, a state court is prevented from exercising jurisdiction over it. *U.S. v. $530,000.00*, 1987 WL 27357, at *2 (N.D. Ill. 1987) ("Pursuant to § 881, therefore, from the time the proceeds were taken into federal custody, the state court was prevented altogether from acquiring jurisdiction.").[3] The adoption in this case was effective on November 23, 2020 when the Currency was turned over to HSI. Consequently, any order or statement regarding jurisdiction issued by the State Court after the November 23, 2020 adoption cannot operate to defeat federal jurisdiction. Therefore, the November 24, 2020 and February 9, 2021 orders, both issued after the federal adoption, do not bind this Court.

Although it is clear that this Court is not bound by the State Court's orders which followed the federal adoption, Claimant argues that his filing of a motion to return in his criminal proceeding, which took place before the adoption, vested the State Court with *in rem* jurisdiction. Federal courts analyzing whether state proceedings and federal forfeiture actions conflict do so by looking to the relevant state's law. *See City of Concord v. Robinson*, 914 F.Supp.2d 696, 705 (M.D.N.C.2012) ("The cases addressing whether a motion filed by a defendant in a state court criminal case gives the state court in rem or quasi in rem jurisdiction over the money are all over

---

[3] *See also U.S. v. $119,000 in U.S. Currency,* 793 F. Supp. 246 (D. Haw. 1992) (The state court granted an order on a petition to return property after the federal adoption but prior to a federal forfeiture complaint being filed, which are the facts before this Court. In resolving a motion for summary judgement, the federal district court held that (1) "the state court order does not affect this court's jurisdiction in a federal civil forfeiture proceeding," and (2) "pursuant to the adoptive forfeiture doctrine, this court's jurisdiction over the currency is prior in time to any of the state court proceedings").

the lot, and usually turn upon the specific statutes in the particular state."). Applying North Carolina law, Claimant's initial motion to return did not vest *in rem* jurisdiction over the Currency.

First, there is no statutory basis for the North Carolina State Court to exercise *in rem* jurisdiction over the Currency during a criminal proceeding. The forfeiture statute under the North Carolina Controlled Substances Act, N.C.G.S. § 90–112(a), has been held to be "a criminal, or *in personam*, forfeiture statute, as opposed to a civil, or *in rem*, forfeiture statute." *State v. Johnson*, 478 S.E.2d 16, 25 (N.C. App. 1996); *Robinson*, 914 F. Supp. 2d at 710 ("North Carolina courts consistently interpret § 90–112(a) to operate *in personam,* not *in rem.*"); *see also State v. Woods*, 554 S.E.2d 383, 386 (N.C. App. 2001), *aff'd*, 564 S.E.2d 881 (N.C. 2002) ("In *State ex rel. Thornburg v. Currency*, 324 N.C. 276, 378 S.E.2d 1 (1989), our Supreme Court held section 90–112(a)(2) is a criminal, or *in personam*, forfeiture statute rather than a civil, or *in rem*, forfeiture statute.").

Additionally, North Carolina State Courts' "housekeeping" authority regarding seized evidence under N.C.G.S. § 15–11.1, which "outlines the state's procedures for custody and disposition of property, including drug proceeds, seized by law enforcement," does not confer *in rem* jurisdiction in the State Court. Rather, that statute specifically states that "property which is subject to forfeiture and disposition under another 'general or special law, shall be disposed of in accordance therewith.'" *Robinson*, 914 F. Supp. 2d. at 706 (quoting N.C.G.S. § 15–11.1(c)). Plainly, for purposes of Section 15–11.1, 21 U.S.C. § 881 constitutes "another law" under which the Currency is subject to forfeiture thereby allowing disposition under federal rather than state law.

Also, case law does not support a finding that a motion to return in a criminal proceeding can confer *in rem* jurisdiction on the state court. In *City of Concord v. Robinson,* 914 F.Supp.2d

696 (M.D.N.C.2012), the court held that a motion to return does not create *in rem* jurisdiction. In *Robinson*, in which the facts are nearly identical to this action[4], the Middle District of North Carolina rejected the premise that a motion to return property vested the state court with *in rem* jurisdiction over seized currency. The court stated "in its March 11, 2010, March 2, 2011, and August 15, 2011, orders [regarding the return of the money, *see id.* at 701-02], the Superior Court was acting on the basis of its indisputable *in personam* jurisdiction over the defendant and not on the basis of *in rem* or *quasi in rem* jurisdiction over the money." *Robinson*, 914 F. Supp. 2d. at 711.

Furthermore, the North Carolina Court of Appeals decision in *State v. Hill* indicates that, in North Carolina, the filing of a motion for return of property is of no jurisdictional significance. *State v. Hill,* 570 S.E.2d 768 (N.C. App. 2002). In *Hill*, the only discussion of the timing of the motion to return was to note that at some point between the search and the hearing on the motion the seized currency was turned over to a federal agency, as is the case here. From *Hill*, it can be inferred, as the court in *Robinson* did, "that the North Carolina Court of Appeals did not find the date a motion for return of the money was filed to be important, and that its decision did not turn on the specifics of when such a motion was filed in relation to when federal authorities adopted the forfeiture" even though the court did not explicitly say so. *See Robinson*, 914 F. Supp. 2d at 709 n.9. Finally, in *Hill* the court's ruling vacated the trial court's order to return funds that had been adopted by a federally agency, stating "*Penn General* is not controlling, however, since federal forfeiture proceedings are civil *in rem* proceedings and our state forfeiture proceedings are *in personam*." *Hill,* 570 S.E.2d at 771.

---

[4] In *Robinson*, the Concord Police Department arrested Robinson on drug charges and seized over $17,000 from her hotel room. Similarly, Sanders was arrested on North Carolina drug charges and law enforcement seized $16,761 from his vehicle in the hotel parking lot.

The Claimant does not cite *any* North Carolina authority that holds *in rem* jurisdiction is conferred on a state court through a motion to return in a criminal proceeding. Additionally, he states the motion did not invoke the state's "housekeeping" authority, N.C. Gen. Stat. § 15-11.1, because that authority applies only to "lawfully seized" property, and the Currency was illegally seized.[5] Instead, Claimant argues that the motion to return was directed to the "inherent equitable, *in rem* jurisdiction" of the State Court. However, the motion to return itself makes no reference to *in rem* jurisdiction. Instead, by all appearances, it is a perfectly routine N.C. Gen. Stat. § 15-11.1 motion and order. The motion to return states "[t]he seizure of cash was not related to any criminal activity" and "[t]hat the seizure of the cash has no evidentiary value to the misdemeanors charged." (Doc. No. 10-3). The language N.C. Gen. Stat. § 15-11.1 states that property that is "no longer useful or necessary as evidence in a criminal trial" may be ordered to be returned by the court. N.C. Gen. Stat. § 15-11.1. While the motion to return does not specifically cite N.C. Gen. Stat. § 15-11.1, or any authority for that matter, it seems clear from its language it was a N.C. Gen. Stat. § 15-11.1 motion.

While not binding on this Court, the orders subsequent to the federal adoption lend further support to the conclusion that motion to return did not confer *in rem* jurisdiction on the State Court. The November 24, 2020 order does not mention, nor does it cite to any authority suggesting that the Court was adopting *in rem* jurisdiction or using its equitable powers (Doc. No. 10-4). This is

---

[5] There is nothing in the record as to why the search was held by the State Court to violate the 4th, 5th, and 8th Amendments of the U.S. Constitution but, nevertheless, a state court finding of an illegal seizure is not binding on this Court. *See Joseph v. Blair,* 482 F.2d 575, 579 n.4 (4th Cir. 1973)*; Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*, 2019 WL 3429120 ("it is well-settled that federal courts are not bound by state court decisions on federal constitutional issues.").

likely because under North Carolina law there is no *in rem* jurisdiction for property seized pursuant to a search by law enforcement. The order merely instructs that the money be returned. *Id.*

Furthermore, the State Court's February 9, 2021, order that held it "acquired *in rem* jurisdiction over the cash on November 19, 2020 - the date Defense Counsel filed the motion for return of property" also undercuts its own assertion of *in rem* jurisdiction. It states the Town and MPD still had "ability to use funds, or to liquidate assets, at their disposal so as to enable them to comply with the subject order by releasing $16,761.00 to Mr. Sanders" and that the November 24 Order "did not premise release of the amount of $16,761.00 on the police department's ability to effect reversal of its wrongful transfer of a different $16,761.00 to a third party." By ordering the Town to use its own funds to repay the Claimant, rather than the seized Currency, the State Court makes clear it was not exercising *in rem* jurisdiction but rather ordering in effect a money judgement against the Town. Claimant's counsel in the state proceedings recognized as much when she sent the Town a "Notice of Intent to Execute on Judgment" which explicitly referred to the order as a "money judgment", which is a decidedly non-*in rem* remedy (Doc. No. 13-1, p. 96).

In sum, the Claimant's November 19, 2020 motion for the return of the Currency did not create *in rem* jurisdiction. It is, by all appearances, a routine N.C. Gen. Stat. § 15-11.1 motion which is an *in personam* action, not *in rem*. Because the only action taken by the State Court prior to the federal adoption was *in personam* in nature, this Court can properly exercise *in rem* jurisdiction over the Currency. The motion to dismiss will therefore be denied.

### A. Motion to Strike

The Claimant's Motion to Strike is denied as moot because the motion relates only to a single footnote that references a Charlotte Observer article critical of the MPD'S handling of this case. This footnote is immaterial and irrelevant to the Court's analysis.

### B. Request for Judicial Notice

The Request for Judicial Notice is granted in part and denied in part. The Claimant asks the Court to take judicial notice of his Motion to Return of November 19, 2020, the State Court order of November 24, 2020, Affidavit of Mooresville Police Department Det. Shawn Elliot, CAFRA form sent by CBP to Sanders, and various government publications on forfeiture. The various government publications are irrelevant to the issue before the Court and therefore the Court need not take judicial notice of them. The other documents are from the state court proceedings or the federal adoption of the Currency. These are relevant and add factual support to the Claimant's motion and therefore the Court may and will take judicial notice of them.

### IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Claimant's the Motion to Dismiss is **DENIED**, the Motion to Strike is **DENIED**, and the Request for Judicial Notice is **GRANTED IN PART** and **DENIED IN PART.**

**SO ORDERED**

Signed: September 22, 2021

Kenneth D. Bell
United States District Judge