**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:21-CV-00053-KDB-DCK**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiffs,** | |
| **v.** | **ORDER** |
| **$16,761 IN UNITED STATES CURRENCY,** | |
| **Defendants.** | |

**THIS MATTER** is before the Court on the United States' Motion for Summary Judgment and Claimant Jermaine Lydell Sanders' Motion to Stay. (Doc. Nos. 33, 37). Having considered the parties' briefs, exhibits, and oral argument on October 18, 2022, the Court will deny Sanders' Motion to Stay and grant the United States' Motion for Summary Judgment.

## I.      BACKGROUND

On November 16, 2020, Mooresville Police Department ("MPD") officers encountered Sanders in the parking lot of a Springhill Suites in Mooresville, NC.  Law enforcement smelled marijuana on both Sanders' person and from a Chevy Silverado. (Doc. No. 33-7, p.3). Officers found nothing illegal on Sanders and released him. Later, after being notified that Sanders was leaving the hotel, officers returned. After Officers arrived, the front desk clerk alerted them that Sanders had run outside and fled in a black passenger vehicle, leaving multiple items in the hotel lobby but taking one bag with him. *Id.*

MPD Officer Scott deployed K9 Hansel, a trained and certified narcotics detection canine, in an open-air sniff of the Chevrolet Silverado while it was parked in the hotel parking lot. K9

Hansel positively alerted to the odor of narcotics. (Doc. No. 33-9 ¶¶2, 4). K9 Hansel was also deployed on a lineup created from the items that Sanders left, and positively alerted to Sanders' items, including four shoe boxes which contained marijuana shake. *Id.* ¶5. MPD then searched the Silverado and found marijuana and $16,761.00 (the "Currency") in the center console of the vehicle. *Id.*; Doc. No. 33-11; Doc. No. 33-7, p.13. Sanders was not present at the time of the search or seizure. Doc. No. 33-8 at 74:23-75:4.

The Currency was packaged together in denominations of ninety-six $1 bills, fifty-three $5 bills, fifty-four $10 bills, six-hundred-eighty-three $20 bills, six $50 bills, and nineteen $100 bills. *See* Doc. 1, ¶ 33; Doc. No. 33-7, p.13. The Currency was placed in a blind lineup of brown paper bags, and K9 Hansel positively alerted to the bag containing the Currency. Doc. No. 33-9 ¶6.

The United States filed a verified complaint for the forfeiture of the Currency under 28 U.S.C. §§ 1345 and 1355 on March 26, 2021. (Doc. No. 1). The United States now moves for summary judgment arguing Sanders lacks standing to contest the forfeiture and even if he does, the United States has met its summary judgment burden of showing the Currency is subject to forfeiture. *See* Doc. No. 33. Along with opposing the United States' Motion, Sanders again asks for a stay[1] because he has petitioned the North Carolina Supreme Court to review the North Carolina Court of Appeals' decision, agreeing with this Court, that the actions taken by the North Carolina trial court before the federal adoption were *in personam* in nature. *See* Doc. No. 18; *See State v. Sanders*, 874 S.E.2d 642 (N.C. Ct. App. 2022).

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v.*

---

[1] The Court previously denied Sanders' motion for a stay. *See* Doc. No. 30.

*8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Constr. Co*., *et al*., 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id*., (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the

3

mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining whether summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III. DISCUSSION

#### A. Motion to Stay (Doc. No. 37)

Sanders has moved to stay this action based on 18 U.S.C. § 981(g) and *Colorado River* Abstention. Having considered the parties' arguments, the Court finds that a stay is not warranted.

##### i. 18 U.S.C. § 981(g)

A forfeiture claimant can move for a stay under 18 U.S.C. § 981(g)(2), which provides that the Court must stay the civil forfeiture proceeding if it determines that: (a) the claimant is the subject of a related criminal investigation or case; (b) the claimant has standing to assert a claim in the civil forfeiture proceeding; and (c) continuation of the forfeiture proceeding will burden the

4

right of the claimant against self-incrimination in the related investigation or case. *See* 18. U.S.C. §981(g)(2)(A)-(C). A claimant must satisfy all three elements to be granted a stay. *See United States v. $410,000.00 In U.S. Currency*, 2007 WL 4557647, at *3 (D.N.J. Dec. 21, 2007).

The terms "related criminal case" and "related criminal investigation" are defined as "an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made." 18 U.S.C. § 981(g)(4). In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court considers the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity for any one or more factors. *Id.*

Here, there can be no "related" criminal case or investigation because there is no ongoing criminal case or investigation. First, the North Carolina criminal case has been dismissed. The presiding Iredell County district court judge denied the state's motion to continue when the charging officer was unavailable. *See* Doc. 33-5, p.11. Homeland Security's criminal investigation related to the forfeiture was also closed and the United States confirmed that, as of May 10, 2022, "there [was] no open criminal investigation of Jermaine Sanders related in any way to this forfeiture action with either the USAO or HSI in the Western District of North Carolina." *See* Doc. 33-6, p.2.[2]

Second, while Sanders is facing various state charges in Connecticut for possession of crack cocaine, heroin, and marijuana; possession of crack cocaine with intent to distribute; and evading/reckless driving/engaging in a police pursuit arising from a March 31, 2018, incident, *see* Doc. 33-15, pp.6-12, there is no credible argument that those charges reflect a "related criminal

---

[2] At oral argument Sanders' counsel conceded that the federal and North Carolina criminal investigations are closed and represented to the Court that the ongoing Connecticut case was the "related" criminal case.

case." Indeed, this incident occurred years before the North Carolina seizure in a different state hundreds of miles away. Moreover, although the United States references this Connecticut case in its complaint, that does not make it a related criminal case, but only potentially relevant evidence under Federal Rule of Evidence 404(b). Sanders' 2018 arrest on drug trafficking charges may be relevant to whether there is a nexus between the Currency and drug trafficking. In particular, Sanders' history of drug charges, intent, and *modus operandi* of storing drug proceeds in the center console of rental vehicles, and his knowledge that the Currency was involved in drug sales could be relevant to the matter before this Court. That said, a relevant case is not necessarily a related one.

Finally, the fact that the case agent and Connecticut law enforcement have been in communication does not make the case related. As discussed above, the communication sought to obtain potentially relevant evidence. In conclusion, there is no related criminal case or investigation pending so a stay cannot be ordered under 18 U.S.C. § 981(g)(2).

ii. *Colorado River* Abstention Doctrine

"[A]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). The federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id*. at 817. Nevertheless, in *Colorado River*, the Supreme Court held that in certain exceptional circumstances, a federal court should abstain in the face of a state court's contemporaneous exercise of jurisdiction. *See id*. at 818. Colorado River abstention rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*. at 817 (internal quotation marks and citations omitted).

6

For a federal court to abstain under the *Colorado River* doctrine, two elements must be satisfied. First, there must be parallel proceedings in state and federal court. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). Second, exceptional circumstances warranting abstention must exist. A federal court uses six factors to determine whether "exceptional circumstances" exist warranting abstention based on wise administration of judicial resources: (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207-08 (4th Cir. 2006).

Parallel proceedings exist if "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union. UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). However, actions that are virtually identical may not be parallel if they raise different issues or seek different remedies. *Id*. The Fourth Circuit has "strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical." *VonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017) (quoting *Chase Brexton*, 411 F.3d at 464). "It is not enough for parties in the state and federal actions to be merely aligned in interest." *Id*. "In addition, even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *Id*.

In this case there are several key differences between the state and federal proceedings. First, this matter is a federal *in rem* civil forfeiture action. In contrast, the genesis of the state matter was an *in personam* criminal proceeding. Second, the parties to the federal case are the United States, the defendant Currency, and Sanders as a claimant. The United States is not a party in the state proceedings. Further, while the Currency is implicated in the state proceedings, it is not a party as it is before this Court. Third, the issue to be decided by this Court is whether, under federal law, the seized Currency has the requisite forfeiture nexus and constitutes proceeds of drug-trafficking activities, and if it does, whether Sanders can satisfy the innocent owner defense under 18 U.S.C. § 983. The state court proceedings concern questions of state law which may affect whether this Court has subject matter jurisdiction but play no direct role in resolving the summary judgment motion pending before this Court. In short, although arising out of the same factual circumstances, the state court proceedings and the proceedings in this Court do not qualify as parallel. Therefore, the Court will deny the motion for a stay.

B. Motion for Summary Judgment (Doc. No. 33)

1. Standing

As a threshold matter, the United States argues that Sanders lacks Article III standing to contest the forfeiture of the Currency. A claimant challenging a civil forfeiture must "have a colorable interest in that property, which he or she must support with some evidence beyond a mere assertion of ownership to survive summary judgment." *United States v. Phillips*, 883 F.3d 399, 405 (4th Cir. 2018). A claimant "has the burden to establish standing by a preponderance of the evidence." *United States v. $122,640.00 in U.S. Currency*, 81 F. Supp. 3d 482, 485 (D. Md. 2015); *see also Phillips*, 883 F.3d at 404 (noting "a claimant bears the burden of establishing standing"). Sanders argues that he has established standing based on the fact: (1) that he provided

8

a sworn statement that the Currency is his property; and (2) that the Currency was taken from a rental vehicle, which MPD knew was at one time possessed by Sanders. Both facts together are insufficient to establish standing.

A bare assertion of ownership, even under oath, is insufficient to establish standing in a civil forfeiture proceeding. *See United States v. Real Prop. Located at 5201 Woodlake Drive*, 895 F. Supp. 791, 794 (M.D.N.C.1995). There must be "other indicia of true ownership." *United States v. Approximately $252,140.00 in US Currency,* 532 F. Supp. 3d 334, 338 (W.D.N.C. 2021). "Ownership may be established by proof of "actual possession, control, title, and financial stake." *Id* (citing United *States v. $119,030.00 in U.S. Currency*, 955 F. Supp. 2d 569, 576 (W.D. Va. 2013)). Accordingly, Sanders must provide some evidence other than his bare assertion that the Currency belongs to him.

Apart from his statement that the Currency is his, Sanders points to the circumstances around the seizure. He argues that the fact that the Currency was taken from a vehicle, which MPD knew he once possessed, and which it attributed to him, is evidence of ownership.  However, this is also insufficient. The facts here are strikingly like that of *United States v. $447,815.00 in U.S. Currency*. In *$447,815.00 in U.S. Currency*, the claimant was not present at the time of seizure, was not an occupant of the vehicle at the time and was not the owner of the vehicle in which the police discovered the currency. Consequently, the court found the claimant lacked standing to contest the forfeiture. *See United States v. $447,815.00 in U.S. Currency*, 2011 WL 4083640, at *3 (M.D.N.C. July 26, 2011), *report and recommendation adopted*, 2011 WL 4078922 (M.D.N.C. Sept. 2, 2011), *aff'd sub nom. United States v. Carroll*, 470 Fed. Appx. 192 (4th Cir. 2012). Here, Sanders was not in possession of the Currency when it was seized, and the rental vehicle was not Sanders' but was given to him by "Sammy." *See* Doc. No. 33-8 at 57:6-13. Sanders never saw the

9

rental agreement for the vehicle and was never listed on it. *Id.* at 59:16-21. Although law enforcement did witness Sanders in possession of the vehicle the previous night, that is insufficient for Sanders to meet his burden. *See United States v. $600,000.00 in U.S. Currency*, 871 F. Supp. 1397, 1400 (D. Kan. 1994) ("Mere possession of the vehicle and the keys are not sufficient to confer standing.").

Furthermore, a court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions advantageous to his cause. *See United States v. $31,000.00 in U.S. Currency*, 774 Fed. Appx. 288, 292 (6th Cir. 2019) ("Although parties can invoke the Fifth Amendment against questions that would incriminate them—even questions about the contested property's origins—they run the risk of having their claim struck if they blanketly assert the privilege as a stonewalling tactic."). Sanders invoked the Fifth Amendment in response to nearly all the United States' questions, even ones that could not reasonably lead to self-crimination. He refused to answer such questions as: (1) have you ever earned any legitimate income from any other source other than the two jobs you have mentioned; (2) did you receive any money from any other source other than your mother or grandmother; (3) have you ever applied for any type of government benefit; and (4) what financial institution did you get your debit card from? *See* Doc. No. 33-8. Sanders also refused to answer questions related to his November 2020 trip. *Id*. This has precluded the United States from investigating or conducting third-party discovery into the purported source of the Currency and supports a finding that Sanders has not established standing to contest the forfeiture. Simply put, Sanders' decision to not answer these questions, which was his right, has wounded his standing argument. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions");

*United States v. $433,980 in U.S. Currency*, 473 F. Supp. 2d 685, 692 (E.D.N.C. 2007) ("In his deposition, [claimant] refused to be cross-examined on his acquisition of the currency, invoking his Fifth Amendment privilege against self-incrimination whenever questioned on the issue by the Government's attorney. Rule 56 precludes [claimant] from manufacturing a genuine issue of material fact by selectively invoking Fifth Amendment protection 'for the limited purpose of making statements to support a summary judgment motion.'"); *see also United States v. $46,340.00 in U.S. Currency*, 2019 WL 481168, at *1, 5 (N.D. Ohio Feb. 7, 2019), *aff'd*, 791 Fed. Appx. 596 (6th Cir. 2020) (granting summary judgment on lack of standing and noting "[t]here is no apparent, much less submitted, reason why a person cannot provide proof of his lawful possession of funds with no jeopardy to his Fifth Amendment rights.").

In sum, Sanders' only evidence of a colorable ownership interest in the Currency is his self-serving assertion of ownership and the fact he was seen in possession of the rental car hours before the Currency was seized. Because of his refusal to answer relevant questions at his deposition and the lack of documentary support, Sanders has not established actual possession, control, title, or a financial stake in the Currency. Even considering the evidence in the light most favorable to Sanders, he has failed to meet his burden. Sanders therefore does not have standing to contest the forfeiture.

2. Merits of the Motion

"Property is subject to forfeiture if it either facilitated the transportation, sale, receipt, possession, or concealment of a controlled substance, or was intended to do so, or constitutes proceeds of drug-trafficking activities." *United States v. McClellan*, 2022 WL 3221230, at *2 (4th Cir. Aug. 10, 2022) (citing 21 U.S.C. § 881(a)(6)). The Government bears the initial burden of

establishing forfeitability by a preponderance of the evidence. 18 U.S.C. § 983(c)(1); *United States v. $98,699.60 in U.S. Currency*, 2017 WL 750701, at *15 (E.D.N.C. Feb. 23, 2017).

To satisfy its burden, the Government must establish a nexus between the property and a crime. With "proceeds," there is a nexus if property would not have been received "but for" the crime. *See United States v. Farkas*, 474 Fed. Appx. 349, 359-60 (4th Cir. 2012). As to property involved in or that facilitates crime, forfeiture is appropriate upon a finding of a nexus in the form of a substantial connection between the property and crime. *See United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (noting similarity between civil and criminal forfeiture laws) *But cf. McLellan*, 2022 WL 3221230, at *2 (without discussion, applying substantial connection analysis to proceeds and facilitating property). The United States may rely on "circumstantial evidence to establish forfeitability." *Id.*; *see also United States v. $94,200 in U.S. Currency*, 2012 WL 2885129, at *5 (M.D.N.C. July 13, 2012). "Moreover, [p]roceeds need not be tied to any particular identifiable drug transaction." *United States v. $240,100 in U.S. Currency*, 2017 WL 2303985, at *6 (M.D.N.C. May 25, 2017) (internal quotation omitted).

Sanders argues that: (1) there are disputed facts that preclude summary judgment; (2) 18 U.S.C. § 983 violates the Due Process Clause; and (3) forfeiture would violate the Eighth Amendment's Excessive Fines Clause. The United States maintains that it has met its burden of showing that the undisputed facts establish by a preponderance that the Currency is proceeds of drug trafficking. The Court will address Sanders' constitutional arguments first and then proceed to the merits of this matter.

### i. <u>Does 18 U.S.C. § 983 violate the Due Process Clause?</u>

12

Sanders argues that 18 U.S.C. §983 violates the constitution in two ways. First, he alleges it unconstitutionally shifts the burden of proof. And second, he claims the equitable sharing program and its "profit motive" violates due process. However, both arguments fail.

a. Burden of Proof

Sanders argues that 18 U.S.C. § 983 is "unconstitutional at least as applied when it permits the government to forfeit property without proof that the property owner committed a crime, and because it imposes the burden of proving innocence on the claimant." [3] However, several courts have rejected this argument and this Court agrees. *See United States v. $114,700.00 in United States Currency*, Civil Action No. 17-cv-00452-CMA-GPG, 2018 U.S. Dist. LEXIS 16557, at *3 (D. Colo. Feb. 1, 2018) (finding that the burden of proof set forth in 18 U.S.C. § 983(c) is constitutional after considering the individual interest, risk of error, and the governmental interest.); *see also United States v. Ursery*, 518 U.S. 267, 292, 116 S. Ct. 2135, 2149 (1996) (holding forfeiture proceedings under 21 U.S.C. § 881 "are neither punishment nor criminal for purposes of the Double Jeopardy Clause").

The Supreme Court has set forth three factors for determining whether a particular standard of proof satisfies due process: (1) the governmental interest served by the procedure; (2) the individual interest affected by the official action; and (3) the risk of erroneous deprivation and the probable value of additional safeguards. *See Mathews v. Eldridge,* 424 U.S. 319, 335 (1976); *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Application of these factors demonstrates that the use of a preponderance standard does not violate Sanders' right to due process of law. First, the United States has a legitimate interest in removing from commerce

---

[3] Sanders acknowledges that controlling Fourth Circuit precedent does not currently support this position but presents the issue to preserve it for appeal.

proceeds gained through crime. *See Ursery,* 518 U.S. at 291. Second, the individual interest at risk here is significant but is adequately safeguarded by an innocent owner defense subject to the same preponderance standard applicable to the government's claim. 18 U.S.C. § 983(d)(1). *See United States v. Real Prop. Known as W. 164th St*., No. 15-1206-JWB, 2022 U.S. Dist. LEXIS 90632, at *8 (D. Kan. May 19, 2022). And lastly, the preponderance standard fairly allocates the risk of error between the parties, providing the United States an adequate opportunity to prove its case while allowing a claimant to adequately refute it. *Id*. There are also numerous statutory safeguards that protect claimants from an erroneous deprivation of their property. A claimant has a right to counsel if counsel was appointed for a related criminal case and, as noted above, the statute provides an innocent owner defense. 18 U.S.C § 983(b)(1)(A), (d).

In sum, weighing the competing interests and considering any risk of error posed by a preponderance of the evidence standard, the Court finds, as every other court to consider the issue has, that the burden of proof set forth in 18 U.S.C. § 983(c) is constitutional.

      b.  Equitable Sharing

The equitable sharing program allows the United States to share forfeited property with state or local law enforcement agencies after a forfeiture has been fully adjudicated, a final order of forfeiture has been entered by the court, the United States has taken clear title to the property, and the local law enforcement agency has submitted the required form. *See United States v. 434 Main St*., 862 F. Supp. 2d 24, 33 (D. Mass. 2012); *see also City of Concord v. Robinson*, 914 F. Supp. 2d 696, 703 (M.D.N.C. 2012) (citing *DeSantis v. State*, 384 Md. 656, 866 A.2d 143, 145-46 (Md. 2005) (describing equitable sharing programs generally); Holcomb, 39 J. Crim. Just. at 274-75 (describing reasons why state and local agencies would elect to use equitable sharing)). Equitable sharing is thus distinct from the forfeiture provisions that the United States is attempting

to enforce against the Currency and will only occur if the United States has prevailed on its forfeiture claim.

The "irreducible constitutional minimum of standing" related to the equitable sharing program comprises three requirements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). The requirements are: (1) there must be an alleged injury in fact — a harm suffered by the party asserting the claim that is concrete and actual or imminent, not conjectural or hypothetical; (2) there must be causation — a fairly traceable connection between the party's injury and the complained-of conduct of the opposing party; and (3) there must be redressability — a likelihood that the requested relief will redress the alleged injury. *Steel Co*., 523 U.S. at 103, 118 S. Ct. at 1016-17. Sanders has not demonstrated a causal link between his injury and the equitable sharing program. Sanders' argument rests on the assumption that the arresting officers had a profit motive. Still, he failed to conduct discovery that revealed a profit motive by any of the arresting officers. Sanders therefore lacks standing to contest the equitable sharing program because he has failed to establish a causal link between the equitable sharing program and his injury.

### ii. Would Forfeiture violate the Eighth Amendment's Excessive Fines Clause?

Sanders also argues that forfeiture would violate the Eighth Amendment's Excessive Fines Clause. Forfeitures are punitive, and thus the Excessive Fines Clause of the Eighth Amendment limits the United States' forfeiture power. *See Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Courts consider four factors in evaluating whether a forfeiture violates the excessive fines clause: "(1) the amount of the forfeiture and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between

the crime charged and other crimes; and (4) the harm caused by the charged crime." *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014) (citation omitted).

However, even if there was any merit in Sander's argument – about which the Court is skeptical – any consideration of it is premature. Courts do not analyze an Excessive Fines argument until after a civil forfeiture order has been entered. *See, e.g.*, *434 Main Street*, 862 F. Supp. 2d at 35-36; *Matter of Search of Tango*, 2022 WL 1165569, at *3 (D.D.C. Apr. 4, 2022) ("Eighth Amendment issues are not ripe until after a court enters a civil or criminal forfeiture order."); *United States v. All Funds on Deposit at Citigroup Smith Barney Account 600-00338*, 617 F. Supp. 2d 103, 129-130 (E.D.N.Y. 2007) (courts hold hearing on Eighth Amendment after determination on merits of forfeiture); *but c.f. United States v. 47 West 644 Route 38, Maple Park, Illinois*, 190 F.3d 781, 783-84 (7th Cir. 1999). Accordingly, a determination of whether the forfeiture violates the Eighth Amendment must await entry of a forfeiture order.

### iii. <u>Underlying Merits</u>

Turning to the merits of the forfeiture itself, the Court concludes, considering the totality of the circumstances, forfeiture is appropriate because there is a substantial connection between the Currency and drug trafficking.

Under the substantial connection test, "the property must have more than an incidental or fortuitous connection to criminal activity," but need not be "integral, essential or indispensable" to that activity. *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990). If the United States meets its burden, the burden shifts to the claimant to show by a preponderance of the evidence that he or she is an "innocent owner" of the property. 18 U.S.C. § 983(d)(2). The court must "consider the totality of the evidence as a whole and in the appropriate context." *United States v. Currency, U.S., $147,900.00*, 2011 WL 4866473, at *2 (4th Cir. Oct. 14, 2011) (unpublished) (quoting *United*

*States v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 469 (7th Cir. 2005)). Having considered the totality of the evidence, the Court finds the United States has met its burden.

To begin with, Sanders has no legitimate income or explanation for the Currency. Sanders claims the Currency came from two sources: (1) money given to him by his deceased grandmother and (2) his own savings. Yet, Sanders refused to answer questions related to these "legitimate" sources of the Currency. He could not specify how much came from each respective source, and Sanders failed to provide any documentation related to the Currency. Sanders also stated he is disabled and has not worked since 2017 but would not answer whether he has ever applied for any type of government benefit. *See* Doc. No. 33-8 at 10:9-17. Before 2017, Sanders had only four years of legitimate earnings, earning $8 an hour at Walmart for two years and possibly $20,000 per year as a telemarketer for two years. *Id.* at 13:20-19:1. These alleged sources of legitimate income cannot explain why Sanders had $16,761 in cash to allegedly buy a BMW. *See United States v. $13,963.00, More or Less, in U.S. Currency*, 2009 WL 3293852, at *8 (S.D.W. Va. Oct. 13, 2009), *aff'd*, 382 Fed. Appx. 268 (4th Cir. 2010) ("Although the Court finds Mr. Wilson did have some legitimate sources of income, that income was inadequate to pay his expenses and account for the nearly $14,000 in cash he had on him in September 2006.").

Sanders seeks to explain the accumulated Currency by stating he has no expenses because he lives with his mother. However, Sanders admits his mother is currently unemployed and did not know if she was working at the time of the seizure. *See* Doc. No. 33-8 at 45:7-23. Also, Sanders stated that at the time of the seizure he lived at a different address than his mother, had monthly expenses of at least $1,100 in rent and $400 in food. *See* Doc. No. 33-5 at pp.3-4. Moreover, Sanders inevitably incurred some costs for food, gas, and lodging for his November 2020 trip to North Carolina. In short, Sanders' claim of no living expenses is implausible, and he has offered

17

no evidence to support his alleged lack of living expenses. *See United States v. $122,640.00 in U.S. Currency*, 81 F. Supp. 3d 482, 494 (D. Md. 2015) ("Because [claimant's] assertion of no living expenses is implausible, it was incumbent upon Claimant to come forth with more persuasive evidence, and she has not done so."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ("If the factual context renders [a] claim implausible . . . [the nonmovant] must come forward with more persuasive evidence to support [the] claim than would otherwise be necessary.").

Next, the possession of unusually large amounts of cash is circumstantial evidence of drug trafficking. *See United States v. $307,970.00 in United States Currency*, No. 4:12-CV-136-FL, 2019 U.S. Dist. LEXIS 32850, at *30 (E.D.N.C. Mar. 1, 2019) (citing *United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990)). A commonsense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles. *See United States v. McClellan*, 44 F.4th 200, 213 (4th Cir. 2022) (Wilkinson, dissenting) (citing *United States v. $242,484.00*, 389 F.3d 1149, 1161 (11th Cir. 2004) (en banc)("drug rings . . . commonly do utilize couriers to transport in cash their ill-gotten gains, which can be huge…[a] large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is 'strong evidence' of such a connection.")). The $16,761 in seized Currency is an abnormally large sum of cash for anyone to carry for a legitimate purpose. In addition, the Currency's composition consisted of ninety-six $1 bills, fifty-three $5 bills, fifty-four $10 bills, six-hundred-eighty-three $20 bills, six $50 bills, and nineteen $100 bills. These small denominations also suggest a connection to drug trafficking. *See United States v. $36,000.00 in U.S. Currency*, 2018 WL 839865, at *6 (C.D. Cal. Feb. 8, 2018) ("Courts generally give special weight to the currency's

18

denominations when the currency is in small denominations, in non-uniform bundles, bundled with rubber bands and bundled without bank wrappers.").

Further, a certified drug detection dog, K9 Hansel, positively alerted to the Currency, rental vehicle, and items left in the hotel lobby. The K9 was deployed on the shoe boxes, trash bag, and luggage left behind by Sanders and positively alerted to the odor of narcotics on these items. The four shoe boxes left behind contained marijuana shake. *See* Doc. No. 33-9, p. 2. In *McClellan*, the Fourth Circuit noted it would be unreasonable to infer that a positive ion test suggests that the cash was connected to drugs because a positive scan may only determine that the cash has a trace amount of cocaine on it and therefore "tells us little about when, where, or why the cash contacted cocaine." *McClellan*, 44 F.4th at 207 (citing *Jones v. DEA*, 819 F. Supp. 698, 720 (M.D. Tenn. 1993) (noting studies estimating that between one-third and 97% of cash is contaminated with cocaine)). That said, a positive K9 alert is significantly different.

The Fourth Circuit has held that a positive alert by a drug dog is sufficient on its face to establish probable cause if an affidavit supporting the warrant states that the dog is trained and certified to detect controlled substances. *See United States v. Koon Chung Wu*, 217 F. App'x 240, 245 (4th Cir. 2007). Although the Court is not undertaking a probable cause analysis, MPD K9 Officer Jesse Scott has submitted an affidavit attesting that at the time of the seizure K9 Hansel was certified by the United Police Work Dog Association to detect, among other things, marijuana. *See* Doc. No. 33-9. The Court accordingly finds the K9 Hansel's alerts were reliable and support a finding that the Currency is connected to drug trafficking. *See United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002) ("the nature of the dog's alert, coupled with the rest of the circumstances, supported a reasonable belief that drugs had been transported in the car, probably in the secret compartment, and that the currency found in the compartment was linked to drug

trafficking."); *see also United States v. $189,150.00 in United States Currency*, Civil Action No. RDB-17-0735, 2018 U.S. Dist. LEXIS 19845, at *8 (D. Md. Feb. 6, 2018); *see also  Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 1057, 185 L. Ed. 2d 61 (2013) ("evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.").

Additionally, Sanders' 2018 drug trafficking charges support a finding of a substantial connection between the Currency and drug trafficking. The Fourth Circuit has held a claimant's prior drug charges are inadmissible to make a "propensity inference" that because a claimant previously engaged in drug related activity the property at issue must be connected to drug activity. *McClellan*, 44 F.4th at 206. This is exactly the type of argument the Federal Rules of Evidence prohibit. *See United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017). At the same time, a claimant's criminal history may be admissible for a proper purpose. *Id*. at 266. To meet that burden, the United States "must identify each proper purpose for which it will use the other acts evidence and explain how that evidence fits into a chain of inferences—a chain that connects the evidence to each proper purpose, no link of which is a forbidden propensity inference." *McClellan*, 44 F.4th at 206. (Citing Hall, 858 F.3d at 266).

Here, the United States has offered Sanders' 2018 drug trafficking charges to show his intent and *modus operandi* of storing drug proceeds in the center console of rental vehicles, and his knowledge that the Currency was involved in drug sales under Fed. R. Evid. 404(b). On March 31, 2018, the Derby Police Department in Connecticut pursued a rental vehicle operated by Sanders. *See* Doc. No. 33-15, p. 7. After law enforcement ended their pursuit, officers located the wrecked rental vehicle, and found Sanders at a hospital attempting to give the car keys to a family member after he fled on foot. *Id*. at pp.7-8, 10. Law enforcement found marijuana and bundled

currency in the center console. *Id*. The United States maintains that the currency found by Derby law enforcement was stored in essentially the same manner as the Currency at issue. Mindful of the court of appeals' holding in *McClellan*, the Court has only considered this prior drug charge to show that Sanders has a *modus operandi* of using rental vehicles to traffic drugs and of storing large amounts of currency in the center console.[4]

Lastly, and critically, Sanders invoked the Fifth Amendment when asked whether: (1) he possessed or sold drugs on his November 2020 trip to North Carolina; (2) he was around drug traffickers during that trip; (3) the vehicle was rented for him by a drug trafficker; (4) he used, purchased, or sold drugs in 2020; (5) he earned income from the sale of drugs in the years 2017-2020; and (6) the Currency was obtained as the proceeds of drug trafficking. *See* Doc. No. 33-8 at 51:9-53:13, 57:4-59:12, 99:17-19; *see also* Doc. No. 33-3 at p. 3. The Court can, and will, take an adverse inference from Sanders' blanket and broad invocation of his Fifth Amendment rights to relevant questions surrounding the Currency. *See $433,980*, 473 F. Supp. 2d at 691-92 (drawing adverse inference due to invocation of Fifth Amendment at deposition).

In opposition to the forfeiture, Sanders argues "there are facts upon which a jury could find the MPD's search of Sanders' vehicle and seizure of his property violated the Fourth Amendment." In particular, he asserts "MPD allege that they had probable cause to search the vehicle because, in part, a narcotics canine altered to the vehicle during the mid-day search. But a jury could reject this contention. Sanders testified that he observed MPD officers bring a canine to his vehicle as part of the first encounter at around two in the morning, and that the dog did not alert to his vehicle." This argument is, however, wrong.

---

[4] Even absent consideration of Sanders' 2018 drug charges, the Court would still find, based on totality of the circumstances, that the United States has been met its summary judgment burden for the other reasons discussed in this Order.

First, while the exclusionary rule applies to civil forfeiture, *See United States v. Taylor*, 13 F.3d 786, 788 (4th Cir. 1994), a claimant seeking to exclude evidence on Fourth Amendment grounds must file a motion to suppress, which has not been done here. *United States v. $78,850.00 in U.S. Currency*, 444 F. Supp. 2d 630, 636–37 (D.S.C. 2006) (holding that a motion to suppress is proper vehicle to challenge a seizure in forfeiture proceedings); *see* Supplemental Rules For Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(8)(a)( if "the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence.").[5]

Second, despite Sanders' assertion, the Court would decide the suppression issue, not the jury. *See United States v. Collins*, 577 Fed. Appx. 180, 184 (4th Cir. 2014) (standard of review); *United States v. $22,600.00 U.S. Currency*, 2017 WL 2196740, at *3 (D. Or. Mar. 18, 2017) (deciding suppression in civil case on the pleadings, declarations, and depositions). Sanders argues that the Seventh Amendment to the United States Constitution, which provides "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States," requires that this suppression issue be a jury question. *See* Doc. No. 36. The only authority cited by Sanders is a 1982 case from the Texas Court of Criminal Appeals which held that under Tex. Code Crim. Proc. Art. 38.23 it was an error to present to the jury the issue of whether the search of defendant's car was illegal. *See Morr v. State*, 631 S.W.2d 517 (Tex. Crim. App. 1982). This Texas state court decision, which dealt with a question of state criminal procedure, is insufficient to overcome the plain text of Rule G(8)(a) and the apparent uniform

---

[5] The Court's scheduling order provides that "[a]ll motions except motions in limine and motions to continue shall be filed no later than August 15, 2022." *See* Doc. No. 25, p.3. Sanders did not move to suppress by August 15th, and any suppression arguments made in his response filed on September 12, 2022, are untimely.

practice of federal courts of deciding suppression issues as a matter of law in the civil forfeiture context. Moreover, the fact the Currency was first seized by North Carolina authorities does not require the submission of the suppression issue to the jury. Sanders has not identified any North Carolina criminal procedure provision analogous to the one at issue in *Morr* and even if he did, it would likely not be binding on this Court.

In sum, considering the totality of the circumstances, the United States has met its burden of establishing by a preponderance of the evidence that the Currency constitutes proceeds of drug trafficking and is therefore subject to forfeiture.

### iv. Innocent Ownership

Having found the United States has met its burden, Sanders may, assuming he has standing (which the Court finds he does not), argue that he is an innocent owner of the Currency. Civil forfeiture allows the government to take property but "[a]n innocent owner's interest in the property shall not be forfeited." *See* 18 U.S.C. § 983 (d)(1). Sanders must prove this defense by a preponderance of the evidence. *See United States v. $115,471.00 in U.S. Currency*, No. 1:11CV318, 2017 WL 2842778, at *6 (M.D.N.C. July 3, 2017).

Sanders has failed to meet this burden. As discussed above, Sanders has offered no evidence of ownership. He merely asserts the Currency is his and that it consists of his own savings and gifts. Sanders has offered no evidence to support these assertions (and indeed has refused to even answer relevant questions about his alleged ownership of the money) and therefore the Court must find that he has failed to meet his burden. *See United States v. 110,873.00 in United States Currency*, 159 F. App'x 649, 652-53 (6th Cir. 2005) ("Whether one's metaphor of choice is shields and swords or parries and thrusts, the point is the same: A litigant may not invoke the Fifth

Amendment to avoid answering questions in discovery, then cry foul when the absence of evidence in favor of the litigant requires summary judgment to be entered against him.").

**NOW THEREFORE IT IS ORDERED THAT:**

1. United States' Motion for Summary Judgment, (Doc. No. 33), is **GRANTED;**

2. Jermaine Lydell Sanders' Motion for a Stay, (Doc. No. 37), is **DENIED**;

3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed:    October    20,

Kenneth D. Bell
United States District Judge